IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:07-HC-2195-FL

VAUGHN DELONG,                          )
                                        )
               Petitioner,              )
                                        )
        v.                              )               ORDER
                                        )
GEORGE SNYDER,                          )
                                        )
               Respondent.              )

The matter is before the court on the motion to dismiss or in the alternative motion for

summary judgment (DE # 9) of respondent Warden George Snyder (hereinafter "respondent").

Because respondent has attached matters outside of the pleadings, his motion will be construed as

a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following

reasons, the court grants respondent's motion.

STATEMENT OF THE CASE

On October 17, 2007, petitioner Vaughn Delong filed this *pro se* habeas petition pursuant

to 28 U.S.C. § 2241. In his petition, petitioner alleges that his parole revocation violated his rights

under the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, the

Due Process Clause of the Fourteenth Amendment of the United States Constitution, and the Cruel

and Unusual Punishment clause of the Eighth Amendment of the United States Constitution.

Petitioner also argues that he received ineffective assistance of counsel and that the United States

Parole Commission (hereinafter "the Commission") violated its own regulations. On January 30,

2008, respondent filed a motion for summary judgment, arguing that petitioner's claims are without merit. Petitioner filed a response on March 12, 2008.

## STATEMENT OF FACTS

The undisputed facts are as follows. On April 7, 1989, petitioner pled guilty in the District of Columbia (hereinafter "D.C.") to two counts of "Indecent Act/Miller Act." (Resp't's Mem. Ex. D.) Petitioner was sentenced to two consecutive sentences of forty (40) to one hundred twenty (120) years imprisonment, along with five years probation. (Id.) Petitioner subsequently was paroled.

On June 22, 1993, the D.C. Superior Court revoked petitioner's parole because he violated the special condition that he not have unsupervised contact with children under the age of twenty-one (21). (Id. Ex. A, p. 4.) Petitioner was sentenced to a term of one hundred twenty (120) months imprisonment for the offense of indecent liberties with a minor child, and a consecutive term of sixty (60) months for enticing a minor child. (Id. Ex. A, p. 1.)

On January 28, 2002, the Commission denied petitioner's parole and directed petitioner to continue serving his sentence until its expiration.[1] (Id. Ex. B.) At this time, the Commission also imposed the following special conditions on petitioner's mandatory release supervision: (1) to register as a sex offender; and (2) to participate in a mental health program with emphasis on sex offender testing and treatment. (Id.)

Petitioner was paroled on May 30, 2002. (Id. Ex. C.) The following special supervision conditions were placed upon petitioner: (1) petitioner shall not engage in unsupervised contact with children under the age of eighteen (18); (2) petitioner shall not spend time at or loiter near places

---

[1] The Commission assumed responsibility for making parole release decisions for all eligible D.C. Code Offenders on August 5, 1998, pursuant to the Revitalization Act and D.C. Code § 24-409. D.C. Code § 24-131.

2

primarily used by minor children (e.g., schoolyards, swimming pools, playgrounds, arcades, etc.) unless approved by his community supervision officer (hereinafter "CSO"); (3) petitioner shall not possess any overt sexually stimulating or sexually explicit materials considered illegal and/or deemed inappropriate by petitioner's CSO and/or therapist; (4) petitioner shall submit to a polygraph examination upon request by petitioner's CSO and/or therapist; (5) petitioner shall not hold employment, volunteer, or otherwise be in a position where he cares for the elderly, handicapped, or mentally retarded unless approved by his CSO; (6) petitioner shall not have unsupervised contact with his mother; and (7) petitioner shall not come within one hundred (100) yards of 6771 Brigadoon Dr., Bethesda, MD 20817, without prior approval from his CSO. (Id. Ex. D.) Petitioner was to remain on supervision until May 6, 2007. (Id. Ex. C.)

On November 17, 2005, CSO Anthony Desjardins advised the Commission that petitioner had unsupervised contact with minors in violation of the special conditions of his parole release. (Id. Ex. D.) CSO Desjardins also informed the Commission that the conditions imposed on May 30, 2002 had not been officially imposed because the necessary documentation had not been forwarded to the Commission. (Id.) However, CSO Desjardins noted that petitioner recited the special conditions imposed on May 30, 2002, during an office visit with petitioner, and stated that he was aware that he was required to abide by them. (Id.) CSO Desjardins requested that the conditions of petitioner's parole be modified to include the special conditions. (Id.) Petitioner signed a form indicating that he agreed with the proposed modifications. (Id. Ex. E.)

The proposed modifications to petitioner's parole were presented to the Commission. (Id.) On November 18, 2005, United States Parole Commissioner Cranston Mitchell (hereinafter

3

"Commissioner Mitchell") denied the request for modification, stating: "It appears S. has violated conditions of release and that he was aware that conditions existed. Also failed polygraph." (Id.)

On November 22, 2005, CSO Desjardins submitted an Alleged Violations Report requesting that the Commission issue an expedited parole violation warrant. (Id. Ex. G.) The Commission issued a warrant for petitioner's arrest on November 22, 2005. (Id. Ex. H.) The Commission charged petitioner with the following: (1) failure to carry out instructions of the Supervision Officer; and (2) failure to report questioning by law enforcement officials. (Id. Ex. I.) Petitioner then was arrested on November 30, 2005. (Id.) On December 9, 2005, a probable cause hearing was conducted. (Id. Ex. J.) The Commission requested the presence of CSO Desjardins, Maggie Dye, and Geovani Carias as witnesses at petitioner's parole revocation hearing. (Id. Ex. J, pp. 3-4.) Petitioner requested the presence of Officer Ellis as an adverse witness at his hearing. (Id. Ex. J, p. 4.) At the conclusion of petitioner's probable cause hearing, the hearing examiner made a finding of probable cause. (Id. Ex. J, pp. 2-3.)

On November 30, 2005, CSO Desjardins submitted an addendum to his earlier violation report. (See Id. Ex. K.) CSO Desjardins reported that he and his supervisors Matthew Kiely and Akil Walker interviewed two minors regarding their contact with petitioner, and that one of the minors confirmed contact with petitioner. (Id. Ex. K, pp. 4-5.) CSO Desjardins also reported that petitioner admitted having unsupervised contact with minor children. (Id. Ex. K, p. 5.) Then, on January 30, 2006, Case Services Technician Patricia Bennett filed a note in petitioner's file stating that she had contact with proposed witnesses Maggie Dye and Geovani Carias and that she did not feel these witnesses would appear at petitioner's parole revocation hearing. (Id. Ex. L.)

4

On February 1, 2006, the Commission held a parole revocation hearing. (Id. Ex. M.) CSO Desjardins and Officer Ellis appeared at the hearing as witnesses. (Id. Ex. M, p. 1.) Petitioner objected to the absence of the remaining scheduled witnesses. (Id.)

During the hearing, Officer Ellis was called to testify. (Id. Ex. M, p. 2.) Officer Ellis testified that he was called to petitioner's apartment at approximately 11:00 p.m. on October 7, 2005. (Id.) Officer Ellis stated that when he arrived at petitioner's apartment he found three non-English speaking males in petitioner's apartment, and that one of the males was a minor. (Id.) Officer Ellis further testified that petitioner denied knowing that any of the males were under the age of eighteen and stated that one of the boys had asked to take his shirt off because it was wet. (Id.)

Petitioner also testified at his parole revocation hearing. In particular, he testified that he made an effort to comply with the conditions of his parole and that he was not aware that any of the males found in his apartment were minors. (Id.) Petitioner also initially denied that he failed to report that he was questioned by police. (Id. Ex. M, p. 3.) He then admitted that he did not report the questioning because he did not know that it was a requirement. (Id.) At the conclusion of the hearing, the hearing examiner found that petitioner committed both violations. (Id. Ex. M, pp. 3-4.) The hearing examiner recommended that petitioner's parole be revoked and that he be re-paroled on March 30, 2006, after the service of four months. (Id. Ex. M, p. 4.) Also at the conclusion of the hearing, the hearing examiner dealt with petitioner's objections to the absence of witnesses Maggie Dye and Geovani Carias. (Id.) Specifically, the hearing examiner concluded that the testimony of Officer Ellis and CSO Desjardins was sufficient and made a good cause finding for the absence of the other witnesses because their testimony was not needed. (Id.)

On February 23, 2006, the executive hearing officer reviewed petitioner's file. (Id. Ex. M, p. 4.) The executive hearing officer noted that CSO Desjardins' violation report dated November 30, 2005 had not been considered at petitioner's parole revocation hearing. (Id. Ex. M, p. 5.) The executive hearing officer recommended that the Commission continue petitioner's parole revocation hearing to address the additional information. (Id.) The executive hearing officer did not recommend that the two witnesses who failed to appear be re-subpoenaed because their testimony was not necessary. (Id. Ex. M, pp. 5-6.) Finally, the executive hearing officer noted that petitioner should have an opportunity to respond to the November 30, 2005 report. (Id. Ex. M, p. 6.)

On February 27, 2006, the Commission issued a notice of action and revoked petitioner's parole. (Id. Ex. N.) The Commission ordered that petitioner forfeit all of the time he spent on parole and continued petitioner's hearing to discuss the information contained in the November 30, 2005 report. (Id.)

Petitioner's second parole revocation hearing was held on May 17, 2006. (Id. Ex. P.) The subject of petitioner's second hearing was the additional charge of non-compliance with general conditions of release. (Id. Ex. P, p. 1.) CSO Desjardins testified at petitioner's hearing regarding petitioner's admission that he had unsupervised contact with an additional three minor children. (Id. Ex. P, p. 2.) CSO Desjardins testified that petitioner told him that in June 2005, he allowed unsupervised minors into his apartment to do homework. (Id.) CSO Desjardins also testified that petitioner admitted that he allowed five to six minor males into his apartment in October 2005. (Id.) CSO Desjardins stated that petitioner informed him that he played a Shrek video for the boys, provided them with chips and snacks, and played video games with them. (Id.) Finally, CSO Desjardins testified about an incident that occurred on September 25, 2005. (Id.) CSO Desjardins

6

stated that petitioner informed him that five to six minor males came to his door collecting money for school athletic uniforms and that he and his roommate gave the boys three dollars. (Id.) CSO Desjardins further stated that petitioner informed him that his roommate then left, that petitioner was alone with the boys, and that the boys stayed in petitioner's apartment for an additional hour watching television. (Id.)

On cross-examination, CSO Desjardins stated that he interviewed one of the minor males who had visited petitioner's apartment. (Id. Ex. P, pp. 2-3.) CSO Desjardins stated that the minor male told him that he was not touched while at petitioner's apartment. (Id.) Petitioner's attorney asked that both the interviewed minor male and petitioner's roommate be produced at the hearing as adverse witnesses. (Id.) The request was denied on the grounds that petitioner's attorney had ample time to request the witnesses prior to the hearing. (Id.)

At the conclusion of the hearing, the hearing examiner found that the subject violated the conditions of his release and was guilty of the additional charge. (Id. Ex. P, pp. 3-4.) The hearing examiner found that "the subject has had repeated contact with minors in an unsupervised fashion, and it appears . . . that these contacts will continue without the subject ever taking responsibility for his actions, or acknowledging the seriousness of what he has done." (Id. Ex. P, p. 4.) The hearing examiner also noted that petitioner had prior convictions for sodomy, forcible sex acts, indecent acts with a minor, and enticing a minor. (Id.) Based upon the foregoing, the hearing examiner recommended a decision above the guidelines. (Id.) The hearing examiner stated that petitioner was at more serious risk than indicated by the guidelines because he persisted in unsupervised contact with minor children despite his prior convictions for sex crimes, his intensive sex offender treatment program, and the direction by his CSO not to have contact with minors. (Id.) Accordingly, the

hearing examiner recommended that the Commission exceed the parole guidelines of zero to eight months and continue petitioner to the expiration of his sentence. (Id.)

On May 31, 2006, the Commission issued a notice of action and continued petitioner's parole until the expiration of his sentence. (Id. Ex. Q.) The Commission advised petitioner that a decision above the guideline range was warranted for the following reasons:

> Your parole violation behavior has been rated as administrative violation(s) of Category One severity. Your salient factor score is 6. . . . As of 05-29-2006, you have been in confinement as a result of your violation behavior for a total of 6 month(s). Guidelines established by the Commission indicate a customary range of 0-8 months to be served before release. After review of all relevant factors and information, a decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that you persist to have Unsupervised Contact with Minor Children, specifically males, after you have had three prior convictions for sex Crimes, extensive treatment provided by CSOSA, (Intensive Sex Offender Treatment Program), and you have been specifically ordered by your CSO not to have unsupervised contact with minors. Your denial of responsibility in the revocation proceedings, after your admissions to your CSO, indicates the likelihood you will continue in this prohibited behavior if you are given discretionary parole prior to the maximum release date.

(Id. Ex. Q, pp. 1-2.)

On October 17, 2006, petitioner appealed the Commission's decision to the National Appeals Board, which affirmed the Commission's decision. (Id. Ex. R.) Petitioner then filed the instant action.

8

DISCUSSION

I.      Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

II.     Analysis

A.      Due Process Rights

In his first claim, petitioner contends that his parole revocation proceedings violated his rights under the Due Process Clause. Due process protections apply to parole revocation proceedings. See Morrissey v. Brewer, 408 U.S. 471, 482 (1972). A parolee is entitled to minimum constitutional due process, which requires a reasonably prompt informal inquiry conducted by an impartial hearing officer to determine if there is reasonable ground to believe that the arrested parolee has violated a parole condition. Id. at 484–87. Thereafter, at the revocation hearing, a parolee is entitled to:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not

9

allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489. The Morrissey Court emphasized that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other materials that would not be admissible in an adversary criminal trial." Id.

    1.    Upward Departure

Petitioner alleges that the Commission's decision to exceed the re-parole guideline range violated his rights pursuant to the Due Process Clause because it constituted impermissible double counting. The Commission may make a decision outside of the re-parole guideline range "when circumstances warrant." 28 C.F.R. § 2.21(d). Double counting occurs when the Commission uses the same criteria to establish both the parole guidelines and to justify a departure from those guidelines. See Romano v. Baer, 805 F.2d 268, 271 (7th Cir. 1986); Bailey v. Reilly, No. 6:06-1786-DCN-WMC, 2007 WL 840324, *9 (D.S.C. Mar. 15, 2007) (unpublished). However, double counting does not occur merely because the Commission has used the same information to make two distinct determinations. See Kell v. Parole Comm'n, 26 F.3d 1016, 1020 (10th Cir. 1994). For instance, the Commission does not double count where "it focuses on the number of the prisoner's prior convictions to establish his salient factor score but considers the nature of those convictions to support his decision outside the guidelines." Maddox v. United States Parole Comm'n, 821 F.2d 997, 1001 (5th Cir. 1987).

In this case, the Commission established re-parole guidelines of zero to eight months for petitioner based upon its finding that he violated the standard conditions of parole by not following

the instructions of his CSO that he report any questioning by law enforcement. (See Resp't's Mem. Ex. N). The Commission then upwardly departed from the re-parole guidelines on the basis that petitioner persisted in having contact with minor children despite having received treatment as a sex offender and despite the instruction of his CSO that he have no unsupervised contact with minor children. The upward departure further was based on the fact that petitioner denied responsibility for his conduct after admitting it to his CSO, which indicated to the Commission that he was likely to continue the prohibited behavior. These reasons set forth by the Commission for upwardly departing are grounded in concern for public safety. See Wilson v. Pettiford, No. 4:06-1616-DCN, 2007 WL 2238454, * 9 (D.S.C. July 31, 2007) (unpublished) (finding departure proper where the Commission based decision to depart upward on public safety because the petitioner engaged in repetitive assaultive behavior). Public safety is an adequate reason for an upward departure from the guidelines. See Wilson, 2007 WL 2238454 at *9; White v. Hyman, 647 A.2d 1175, 1179-80 (D.C. 1994). Accordingly, the court finds that the Commission's public safety justification for an upward departure does not violate petitioner's rights under the Due Process Clause.

Due process also requires that the Commission provide a written statement of the reasons for a departure when it decides to depart from the parole guidelines. Petitioner was informed of the Commission's justification for an upward departure in writing. (See Resp't's Mem. Ex. Q.) Therefore, the Commission complied with the applicable parole statutes, and petitioner's Due Process rights were not violated.

2.     Right to Confront and Cross-Examine Witnesses

Petitioner contends that he was not provided the opportunity to confront and cross-examine adverse witnesses in violation of his due process rights.  An adverse witness is a witness who has "given statements upon which revocation may be based."  28 C.F.R. § 2.103(c); Morrissey, 408 U.S. at 487.  For a parole revocation hearing, the Commission "shall, on the request of the alleged violator, require the attendance of any adverse witnesses who have given statements upon which revocation may be based."    28 C.F.R. § 2.103(c).  The Commission also may "require the attendance of adverse witnesses on its own motion, and may excuse any requested adverse witness from appearing at the hearing . . . if it finds good cause for doing so."  Id.

a.     Failure to Produce Witnesses at Hearing

Petitioner contends that his rights under the Due Process Clause were violated because the Commission failed to produce Adriane Zinc (petitioner's roommate) and Q.B. (a minor child) as witnesses at his May 17, 2006 parole revocation hearing.[2]  A parolee at a parole revocation hearing does not have an absolute right to confront and examine adverse witnesses.  See Morrissey, 408 U.S. at 489; Ball v. U.S. Parole Comm'n, 849 F. Supp. 328, 331 (M.D. Pa. 1994).  To succeed on a confrontation claim in a parole hearing, the petitioner "must show that the denial of the right [to confront witnesses] actually prejudiced him."  Country v. Bartee, 808 F.2d 686, 688 (8th Cir. 1987) (per curiam); see also Ball, 849 F. Supp. at 331.  Whether a parolee is prejudiced is determined by examining the "quality and quantity of nonhearsay and reliable hearsay evidence supporting the decision to revoke parole."  McCallum v. Reilley, No. 1:04CV142, 2007 WL 2455662, * 7 (N.D.W.

---

[2] The record reflects that petitioner did not request that these witnesses be present at the hearing until the day the hearing was conducted.  (Resp't's Mem. Ex. P, p. 3.)

12

Va. Aug. 24, 2007) (unpublished) (citing <u>Ash v. Reilly</u>, 431 F.3d 826, 830 (D.C. Cir. 2005) (quotations omitted).

Petitioner's May 17, 2006 hearing focused on petitioner's charge number three: "Non Compliance with General Conditions of Release Specifically, Unsupervised Contact with Minors (Three Counts)." (Resp't's Mem. Ex. P, p. 1.)  During the hearing, the hearing officer considered the testimony of petitioner's probation officer, CSO Desjardins, to support his finding by a preponderance of the evidence that petitioner violated his parole.  In particular, CSO Desjardins testified that petitioner admitted to three unsupervised contacts with minors.  (<u>Id.</u> Ex. P, p. 2.) Petitioner was permitted the opportunity to cross-examine CSO Desjardins.[3]  (<u>Id.</u>)

The hearing examiner's decision in this case was dependent upon a credibility determination with respect to the testimony of CSO Desjardin and petitioner's denial of the charge.  Assessing credibility in parole cases is committed to the discretion of the Commission.  <u>See</u> <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1179 (9th Cir. 1987); <u>Williams v. U.S. Parole Comm'n</u>, 617 F. Supp. 470, 472 (M.D. Pa. 1985) (citing <u>Iuteri v. Nardoza</u>, 732 F.2d 32, 38 (2d Cir. 1984)).  Here, the hearing examiner found CSO Desjardins' testimony to be credible.  Petitioner has not stated how the testimony of Adriane Zinc or Q.B. would have produced a different result. Accordingly, the court finds that the evidence relied upon by the hearing examiner was reliable and was sufficient to

---

[3]  The court notes that on cross-examination, CSO Desjardins testified that he interviewed petitioner's roommate, Adriane Zinc, who informed him that he had no knowledge of any visits to the apartment by children. (Resp't's Mem. Ex. P, p. 3.)  CSO Desjardins testified on cross-examination that he interviewed Q.B., who stated that he was not touched by petitioner while he was at petitioner's apartment.  (<u>Id.</u>)  This testimony was favorable to petitioner.  Petitioner has not presented any evidence of additional testimony that these witnesses could have provided at the hearing.

support the Commission's decision to revoke parole. Therefore, this due process claim is without merit.[4]

> b.    Hearsay

Petitioner also alleges that his due process rights were violated because the hearing examiner relied upon hearsay. Generally, hearsay is admissible in the context of a parole revocation hearing if it is sufficiently reliable. See United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982); Campbell v. United States Parole Comm'n, 704 F.2d 106, 109-10 (3rd Cir. 1983). Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. See U.S. v. Shaw, 69 F.3d 1249, 1253 (4th Cir. 1995).

Upon a review of the record, the court finds that the Commission's findings of fact were not based upon hearsay testimony. Rather, the hearing examiner in petitioner's first parole revocation hearing relied upon the live testimony of eye-witness Officer Ellis for its determination that petitioner was guilty of failing to carry out the instruction of a community supervision officer as directed and of failing to report the questioning of law enforcement officials. (Resp't's Mem. Ex. M.) Because Officer Ellis personally testified about what he saw on the date of the first alleged violation, the hearing examiner did not rely upon the testimony of an out-of-court declarant. See

---

[4] To the extent petitioner alleges that he was denied the opportunity to confront witnesses Maggie Dye or Giovanni Corcas during his February 1, 2006 hearing, this claim too is without merit. The Commission "may excuse any requested adverse witness from appearing at the hearing . . . if it finds good cause for doing so." 28 C.F.R. § 2.103(c). Both witnesses were subpoenaed to appear at the hearing, but both failed to appear. (Resp't's Mem. Ex. M, p. 1.) At petitioner's February 1, 2006 hearing, the Commission found that despite the witnesses failure to appear, there was sufficient evidence to warrant revocation of parole. (Id. Ex. M, p. 5.) Petitioner has not provided any evidence to the contrary. Therefore, the absence of these witnesses did not violate petitioner's due process rights.

Shaw, 69 F.3d at 1253 .  Therefore, the court did not rely upon hearsay to support its findings at the first parole revocation hearing.

As for the second parole revocation hearing, the hearing examiner relied upon the testimony of CSO Desjardins that petitioner admitted to him that he had unsupervised contact with minors while he was on parole.  Federal Rule of Evidence 804(b)(3) provides an exception to the hearsay rule for statements against interest.  Lee v. Illinois, 476 U.S. 530, 551 (1986).  A CSO's testimony regarding a parolee's admission that he violated the conditions of his parole is admissible under the hearsay exception providing for statements against interest.  See e.g. Ascenzi v. Erickson, No. 3:CV-05-2632, 2008 WL 191486, * 5 (M.D. Pa. Jan. 22, 2008) (unpublished).  Additionally, the court notes that testimony from a parole officer is entitled to some indicium of reliability.  See United States v. Bryant, No. 3:04-CR-47, 2005 WL 2739168, *4 (W.D. Va. Oct. 24, 2005) (unpublished).  Based upon the foregoing, the court finds that the hearing examiner's findings at petitioner's parole revocation hearings were not based upon inadmissible hearsay.  Therefore, this due process claim is without merit.

### 3. Sufficiency of the Evidence

Petitioner alleges that his due process rights were violated because there was insufficient evidence to find him guilty of the three parole violations.  The Commission has the authority to revoke a parolee's parole if it finds by a preponderance of the evidence that the individual violated one or more conditions of his parole.  28 C.F.R. § 2.105(a).  The Commission's decision to revoke parole violates due process only when the decision is "either totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair . . . ."  Duckett v. Quick, 282 F.3d 844, 847 (U.S. App. D.C.), cert. denied, 537 U.S. 863 (2002).

Petitioner argues that there was not sufficient evidence to support a parole violation for his charge that he failed to carry out the instruction of his CSO as directed. This charge was based upon an October 7, 2005 incident in which three Hispanic non-English speaking males were found in petitioner's apartment. Petitioner states that the presence of these males in his apartment did not violate the conditions of his parole because it was not unsupervised contact with minors in that at least one of the males, Henry Amayla, was over eighteen (18). The evidence in the record, however, reflects that petitioner previously had been warned that "adult presence, regardless of the circumstances and who it is that is present, cannot reasonably be considered the same as supervision." (Id. Ex. R and Ex. A, p. 6.) Accordingly, even if one of the males who were in his apartment on October 7, 2005 was over the age of eighteen, petitioner still does not have an insufficient evidence claim because he failed to comply with the conditions of his parole in that he did not have appropriate adult supervision.[5]

Regarding the proceedings more generally, the record reflects that the hearing examiner considered the testimony of Officer Ellis and petitioner's probation officer. Based upon this testimony, the hearing examiner found by a preponderance of the evidence that petitioner violated his parole. Having reviewed the evidence and the record, the court finds that the hearing examiner did not violate petitioner's due process rights because his decisions were not totally lacking in evidentiary support or so irrational to be fundamentally unfair. Rather, the hearing examiner's determinations were based upon a credibility assessment of the witnesses who testified at the hearings. As stated, assessing credibility in parole cases is committed to the discretion of the

---

[5] The court notes that petitioner has not presented any evidence that Henry Amayla was in fact present on the night in question. Additionally, the court notes that Officer Ellis testified that, on October 7, 2005, he spoke to one of the males at petitioner's apartment, who confirmed that he was seventeen (17) years old. (Resp't's Mem. Ex. M, p. 2.)

Commission.  See Roberts, 812 F.2d at 1179; Williams, 617 F. Supp. at 472.  Accordingly, the court finds that petitioner's parole revocation was supported by a preponderance of the evidence and that petitioner's claim is without merit.

4.      Impartial Hearing Examiner

Petitioner contends that his due process rights were violated because the hearing examiner who conducted his parole revocation hearing was biased.  Due Process requires that the parole revocation decision be made by a person not directly involved in the case.  Morrissey, 408 U.S. at 485-86.  Parole revocation hearing officers are entitled to a presumption of "honesty and integrity that clothes decision makers."  Sacco v. United States Parole Comm'n, 639 F.2d 441, 443 (8th Cir. 1981).  An unsubstantiated claim of bias is not sufficient to overcome this presumption.  See id.

Here, the hearing examiner involved with petitioner's parole revocation decisions was an individual other than his parole officer CSO Desjardins.  CSO Desjardins was not responsible for either petitioner's probable cause hearing or parole revocation hearing.  Accordingly, there is no due process violation on this ground.  Thus, the court finds that petitioner has not provided any credible evidence of bias to rebut the presumption of honesty and integrity provided parole revocation hearing officers.  Based upon the foregoing, petitioner's due process claim based upon a biased hearing examiner is without merit.

5.      Knowledge of Parole Condition

Petitioner challenges the revocation of his parole for failing to report questioning by law enforcement officials, arguing that revocation on this basis violates due process because he was unaware of this condition of his parole.  The record before the court directly refutes petitioner's contention.  Petitioner's certificate of mandatory parole lists several conditions of release.  One of

the enumerated conditions of release provides: "You shall not violate any law. You shall not associate with persons engaged in criminal activity. You shall get in touch within 2 days with your Supervision Officer if you are arrested or questioned by a law-enforcement officer." (Resp't's Ex. C, p. 2.) The certificate further provides that if the parolee fails to comply with any of the listed conditions he may be "summoned for a hearing or retaken on a warrant and reimprisoned" until it can be determined if his release should be revoked. (Id. Ex. C, p. 1.) Petitioner signed and dated this document. (Id.) Accordingly, it is clear to the court that petitioner had notice of the condition that he was required to report any questioning by a law enforcement officer. Thus, this due process claim is without merit.

      B.     Double Jeopardy

In his second claim, petitioner asserts that the Commission violated his rights pursuant to the Double Jeopardy Clause when it held two separate parole revocation proceedings. The Double Jeopardy Clause of the Fifth Amendment prohibits (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other grounds by Alabama v. Smith, 490 U.S. 794 (1989). That said, the Double Jeopardy Clause does not apply to parole revocation proceedings because its "protections are not triggered by the revocation of parole." United States v. Hanahan, 798 F.2d 187, 189-190 (7th Cir. 1986); United States v. Marmolejo, 915 F.2d 981, 983 (5th Cir. 1990).

Petitioner had two parole revocation hearings. In his first hearing, petitioner was charged with failing to carry out the instructions of his CSO as directed and failing to report questioning by law enforcement officials. Petitioner's parole was revoked subsequent to petitioner's first hearing.

18

Following his first hearing, the executive review officer noted that a second violation report existed that was not considered at the first parole revocation hearing. (Resp't's Mem. Ex. M, p. 5.) The second violation report provided information that petitioner had unsupervised contact with minors on two additional occasions. (Id.) The Commission then continued the original parole revocation hearing to give petitioner the opportunity to rebut the additional charges that he violated the conditions of his parole. (Id. Ex. N.)

The Commission hearing examiner may postpone parole revocation proceedings if he finds that the material he is considering is incomplete. See 28 C.F.R. § 2.72(a). Here, the Commission determined that a continuation of the parole proceedings was necessary to allow petitioner the opportunity to respond to the allegations made in CSO Desjardins parole violations report dated, November 30, 2005. (Resp't's Mem. Ex. M, pp. 4-6.) This course of action is permitted by the parole guidelines. Therefore, there is no due process violation.

To the extent petitioner contends that he was not given notice of the second hearing or the contents of the November 30, 2005 parole violation report, this claim is without merit. Specifically, the record reflects that petitioner was notified of the Commission's decision to continue his parole revocation hearing on February 27, 2006. (Resp't's Mem. Ex. N .) The record further reflects that petitioner was provided a copy of the November 30, 2005 parole violation report on February 28, 2006. (Resp't's Mem. Ex. O.) Petitioner's second parole revocation hearing was held on May 17, 2006. Accordingly, the record reflects that petitioner had sufficient time to review the November 30, 2005 report prior to his second parole revocation hearing. Based upon the foregoing, the court

finds that there is no violation of the Double Jeopardy Clause. Therefore, petitioner's claim is without merit.[6]

C.      Ineffective Assistance of Counsel

In his third claim, petitioner alleges that his attorney provided ineffective assistance of counsel at his parole revocation hearings. A parolee does not have an absolute constitutional right to representation by an attorney at a parole revocation hearing. See Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973). Where such a right exists it emanates from the Due Process Clause and not the Sixth Amendment of the United States Constitution. Id.

Assuming without deciding that the right to counsel existed in this case, petitioner must establish a two-prong test to prevail on a claim of ineffective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). First, petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. Id. This court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 687. For the second prong, petitioner must show there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694. Even then, however, habeas relief may be granted under Strickland only if the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993); Sexton v. French, 163 F.3d 874, 882 (1998). When analyzing ineffective

---

[6] Petitioner was informed of the Commission's decision to continue his parole revocation hearing on February 27, 2007. (Resp't's Mem. Ex. N.) Petitioner's second parole revocation hearing took place on May 17, 2006. (Id. Ex. P.) Accordingly, petitioner had adequate time to prepare for his second hearing. Accordingly, to the extent petitioner alleges any due process claim on the grounds of lack of notice of the second hearing, the claim is without merit.

assistance of counsel claims, a court need not determine whether a counsel's performance was deficient if the claim is readily dismissed for lack of prejudice. Strickland, 466 U.S. at 697.

Petitioner contends that his counsel was ineffective because he failed to obtain witness testimony or present evidence which would have proven his innocence. The court will begin its analysis with the prejudice prong of the Strickland test. As stated, prejudice is established by showing a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Id. at 694. In this case, petitioner has not identified any evidence which would have affected the Commission's decision to revoke his parole.

Petitioner states that his counsel was ineffective because he should have requested the presence of adverse witnesses Adriane Zinc and minor child Q.B. prior to his second parole revocation hearing. Petitioner states that the testimony of these witnesses would have refuted the second charge that he failed to comply with the conditions of his release. Although these witnesses did not testify at petitioner's parole revocation hearing, CSO Desjardins testified at the hearing that he interviewed petitioner's roommate, Adriane Zinc, who stated that he had no knowledge of any child visiting the apartment he shared with petitioner. Additionally, CSO Desjardins testified that he interviewed minor child Q.B., who stated that petitioner never touched him.[7]  This favorable evidence to petitioner was presented at the hearing. Despite this evidence, the hearing examiner found that petitioner was guilty of this charge.

---

[7] Even if petitioner could prove that minor child Q.B. would have testified that he was never in petitioner's apartment, petitioner still could not prove that the outcome of the proceedings would have been different in this case because the violation predicated upon the contact with minor child Q.B. also involved two other incidents of contact with minor children to which CSO Desjardins testified. A finding of contact with any of the three instances of contact with a minor child would have been sufficient to warrant a violation.

The hearing examiner's decision to find a violation at petitioner's second parole hearing was based on CSO Desjardins' testimony that petitioner admitted that he had contact with minors on three separate occasions. (Resp't's Mem. Ex. P.) Petitioner denied the charges. (Id.) Accordingly, the hearing examiner's determination was based upon a credibility determination. As stated, credibility assessments in parole cases are committed to the discretion of the Commission. See Roberts, 812 F.2d at 1179. Petitioner has not provided any evidence to show that the outcome of the proceedings would have been different had Adriane Zinc or Q.B. been present to testify. Nor has petitioner presented any evidence to show that the outcome of the proceedings would have been different had his counsel undertaken any other action. Therefore, petitioner's ineffective assistance of counsel claim is without merit.

D.     Cruel and Unusual Punishment

In his fourth claim, petitioner alleges that the Commission's decision to upwardly depart was cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. As stated above, the Commission's upward departure did not violate petitioner's constitutional rights. Therefore, this claim is without merit.

Petitioner also contends that the Commission's decision to impose a term of imprisonment for his parole violation, without considering other alternatives, was cruel and unusual punishment. In support of his contention, petitioner cites Black v. Romano, 471 U.S. 606 (1985), and Belk v. Purkett, 15 F.3d 803 (1994). However, the United States Supreme Court in Black and Belk found that the Commission is not required to explain on the record the consideration and rejection of alternatives to incarceration upon parole revocation. See Black, 471 U.S. at 616; Belk, 15 F.3d at 814. Rather, the Commission only is required to specifically state the reason for its parole

revocation decision and the evidence relied upon in making that determination. Belk, 15 F.3d at 814. In this case, the Commission provided petitioner written notice of his parole revocation. Additionally, the Commission provided petitioner with written notification of the reasons underlying its decision to revoke his parole. (Resp't's Mem. Exs. N and Q.) Accordingly, the Commission complied with the requirements under the Due Process Clause that pertained to written notice of the Commission's decision.

Petitioner also contends that the Commission should have considered alternatives to imprisonment based upon the United States Supreme Court's ruling in Bearden v. Georgia, 461 U.S. 660 (1983). The United States Supreme Court in Bearden found that where a state imposes a fine as a sentence, it may not automatically convert the fine into a jail term were the defendant is unable to pay the fine. Id. at 664. Petitioner's case is distinguishable from Bearden in that petitioner was not originally sentenced to pay a fine. Instead, petitioner was originally sentenced to incarceration. Therefore, Bearden is not applicable to petitioner's case, and his Eighth Amendment claim is without merit.

E.     The Commission Violated its Own Regulations

In his final claim, petitioner alleges that the Commission violated several of its own regulations. The Fourth Circuit has held that the only constitutional requirement for parole proceedings is that the Commission furnish the parolee with a statement of reasons for denial of parole. Franklin v. Shields, 569 F.2d 784, 801 (4th Cir. 1977); Lane v. Baker, No. 5:05-CT-212-H, 2006 WL 4757285, *1 (E.D.N.C. Sept. 12, 2006) (unpublished), aff'd, 223 Fed. Appx. 290 (4th Cir. Apr. 11, 2007) (unpublished); Neal v. Fahey, 3: 07CV374, No. 2008 WL 728892,*2 (E.D. Va. Mar. 18, 2008) (unpublished). Consequently, the parolee is not entitled to a hearing, access to his files,

or to be entitled to call witnesses in his behalf to appear before the Commission. Id. at 800. Petitioner was provided a statement of the reasons for his denial of parole. (Resp't's Exs. N, M, P, and Q.) Therefore, petitioner's parole proceedings did not violate the Constitution.

Petitioner makes two specific claims regarding the Commission's alleged violation of its own regulations. The court now will address these claims. First, petitioner contends that the Commission violated his constitutional rights because it provided him a tape recording of his parole revocation hearing, but the tape was blank on one side. The Commission is required to make and retain a recording of every parole hearing for D.C. Code prisoners. See 28 C.F.R. § 2.72(e). The Commission is required to provide a parolee with a copy of the recording upon request. 28 C.F.R. § 2.56(e). The Commission still is compliant with the regulation even if the tape is defective. See Glumb v. Honsted, 891 F.2d 872, 873 (11th Cir. 1990); Muhammad v. Mendez, 200 F. Supp. 2d 466, 471 (M.D. Pa. Apr. 15, 2002). Because the Commission provided petitioner with a copy of his parole revocation hearing, albeit an allegedly defective copy, the Commission complied with its regulations. Therefore, there is no constitutional violation.

Second, petitioner argues that his constitutional rights were violated because his parole revocation hearing was not conducted within sixty-five (65) days from the date he was retaken on the parole violation warrant. 28 C.F.R. 2.102(f). In order for a writ of habeas corpus to issue based upon a delay in receiving a parole revocation hearing, the parolee must demonstrate that the delay was unreasonable and that it caused him prejudice. Gaddy v. Michael, 519 F.2d 669, 673 (4th Cir. 1975). In this case, petitioner has not demonstrated that the alleged delay was unreasonable or prejudicial. Therefore, this claim is without merit.

## CONCLUSION

For the foregoing reasons, respondent's motion for summary judgment (DE # 9) is GRANTED. Accordingly, petitioner's § 2241 petition (DE # 1) is DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 29th day of September, 2008.


_____/s/ Louise W. Flanagan_____
LOUISE W. FLANAGAN
Chief United States District Judge